NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAME FINE CHEMICALS, INC., | : | |
| d/b/a JFC Technologies, | : | Civil No. 00-3545  (AET) |
| | : | |
| Plaintiff, | : | **MEMORANDUM & ORDER** |
| | : | |
| v. | : | |
| | : | |
| HI-TECH PHARMACAL CO., INC., | : | |
| | : | |
| Defendant/ | : | |
| Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MEDPOINTE, INC., et al., | : | |
| | : | |
| Third-Party Defendants. | : | |

THOMPSON, U.S.D.J.

I.      Introduction

This matter comes before the Court on Defendant/Third-Party Plaintiff Hi-Tech

Pharmacal Co., Inc.'s ("Hi-Tech") Appeal from the Magistrate Judge's April 4, 2006 Order,

which found that Plaintiff Jame Fine Chemicals, Inc. ("JFC") did not waive attorney-client

privilege or the protection of the work-product doctrine with respect to a document that was

produced during discovery.  The Court has decided this appeal pursuant to Fed. R. Civ. P. 72(a)

and Local Civil Rule 72.1(c) after considering the parties' written submissions.  For the reasons

stated below, the Court will affirm the Magistrate Judge's April 4, 2006 Order.

-1-

II.   Background

During discovery, Hi-Tech issued a subpoena to Wachovia Corporation ("Wachovia"),

one of JFC's financial lenders, requesting financial and insurance documents arising from

Wachovia's relationship to JFC.  In complying with Hi-Tech's subpoena, Wachovia produced

two copies of a January 26, 2000 memorandum ("Memorandum") from JFC's counsel to James

Schleck, the president of JFC.  The Memorandum, which consists of nine pages, is the subject of

this discovery dispute.  (Transcript of March 31, 2006 [hereinafter Tr.], at 21.)  According to Hi-

Tech, the Memorandum "references facts and opinions sent by Mr. Schleck to [JFC's counsel]

regarding significant issues in this case, such as JFC's market share, JFC's relationship and

agreements with MedPointe and JFC's other tannate customers . . . ."  (Hi-Tech's Br. in Supp. at

31.)  JFC characterizes the Memorandum as "part of the confidential legal advice provided by

[counsel] in the aftermath of [a hurricane that damaged one of JFC's facilities]."  (JFC's Br. in

Opp'n at 2.)

While Hi-Tech and JFC agree that the attorney-client privilege and the work-product

privilege apply to the Memorandum, they dispute whether JFC waived these privileges by

inadvertently disclosing the Memorandum. (Tr. at 6-7.)  The Magistrate Judge determined that

JFC did not waive these privileges, and subsequently, Hi-Tech filed the present appeal.

III.   Discussion

A.   Standard of Review for Appeal of a Magistrate Judge Decision

In non-dispositive pretrial matters, a district court may only "reconsider [a] pretrial matter

. . . where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

28 U.S.C. § 636(b)(1)(A); see also United Steelworkers of Am. v. N.J. Zinc Co., 828 F.2d 1001,

1005 n.2 (3d Cir. 1987).  This is the same standard of review set out by Fed. R. Civ. P. 72(a)

("The district judge . . . shall modify or set aside any portion of the magistrate judge's order

found to be clearly erroneous or contrary to law.").  Under this standard, the district court "is

bound by the clearly erroneous rule in findings of facts . . . [and applies] plenary review as to

matters of law.  Haines v. Liggett Group Inc., 975 F.2d 81, 91 (3d Cir. 1992).  The party filing

the appeal bears the burden of demonstrating that the magistrate judge's decision was clearly

erroneous or contrary to law.  Exxon Corp. v. Halcon Shipping Co., 156 F.R.D. 589, 591 (D.N.J.

1994).  A magistrate judge's ruling is clearly erroneous "when, although there is evidence to

support it, the reviewing court is left with a definite and firm conviction that a mistake has been

committed."  S. Seas Catamaran, Inc. v. Motor Vessel "Leeway", 120 F.R.D. 17, 21 (D.N.J.

1988), aff'd, 993 F.2d 878 (3d Cir. 1993).  Under the "clearly erroneous standard of review," the

"magistrate judge's findings should not be rejected even if a reviewing court could have decided

the issue differently."  Toth v. Alice Pearl, Inc., 158 F.R.D. 47, 50 (D.N.J. 1994).

     B.     Waiver of Privilege for an Inadvertently Disclosed Document

     Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal courts

and provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is

relevant to the claim or defense of any party. . . ."  Fed. R. Civ. P. 26(b)(1).  As this case involves

federal antitrust claims and state law claims, the federal common law of privileges applies. See

WM. T. Thompson Co. v. Gen. Nutrition Corp., 671 F.2d 100, 103-04 (3d Cir. 1982).  There

are two types of privilege at issue in this case: (1) attorney-client privilege, and (2) privilege

under the work product doctrine.  These privileges may be waived based on the disclosure of an

inadvertently disclosed document, depending upon the underlying circumstances.  See

Maldonado v. New Jersey, 225 F.R.D. 120 (D.N.J. 2004). Because the issue of waiver is subject

to somewhat different inquiries based on the privilege asserted, attorney-client privilege and

work-product doctrine will be discussed separately. See id. at 127.

> 1.    Attorney-Client Privilege

The purpose of the attorney-client privilege is to "encourage full and frank

communication between attorneys and their clients and thereby promote broader public interests

in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S.

383, 389 (1981). Generally, the privilege will be waived if a client voluntarily discloses

privileged information to a person outside the attorney-client relationship. Westinghouse Elec.

Corp. v. Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991). However, an inadvertent disclosure

does not necessarily constitute waiver of the attorney-client privilege. Bowen v. Parking Auth.,

No. 00-5765, 2002 WL 1754493, at * 4 (D.N.J. July 30, 2002) (citing Westinghouse Elec. Corp.,

951 F.2d at 1427).

Although the Third Circuit has not definitively addressed the issue of waiver by

inadvertent disclosure, courts within this Circuit have generally utilized the approach outlined in

Ciba-Geigy Corp. v. Sandoz, 916 F. Supp. 404, 411 (D.N.J. 1996). Under the Ciba-Geigy

approach, the court considers the underlying circumstances of the disclosure to determine

whether there is waiver. Id. Specifically, the court weighs the following factors:

> (1) the reasonableness of the precautions taken to prevent
> inadvertent disclosure in view of the extent of the document
> production;
> (2) the number of inadvertent disclosures;
> (3) the extent of the disclosure;
> (4) any delay and measures taken to rectify the disclosure; and
> (5) whether the overriding interests of justice would or would not

be served by relieving the party of its error.

Id.  If the court determines that the disclosure resulted from "gross negligence," then it will deem

the disclosure to be intentional, and will find that the attorney-client privilege has been waived.

Id.  The party resisting a waiver argument has the burden of demonstrating that the Ciba-Geigy

factors weigh in its favor.  See id. at 412**.**

2.      Work-Product Doctrine

The work product doctrine protects "documents and tangible things . . . prepared in

anticipation of litigation or for trial by or for another party or by or for that other party's

representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

agent)."  Fed. R. Civ. P. 26(b)(3).  The purpose of the doctrine to "maintain[] legal

professionalism by precluding attorneys from capitalizing on an adversary's work efforts."  Koch

Materials Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 121 (D.N.J. 2002).  The doctrine

"'shelters the mental processes of the attorney, providing a privileged area within which he can

analyze and prepare his client's case.'"  In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d

Cir. 1998) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)).

Generally, if information protected by the work-product doctrine is disclosed to an

adversary, the protection of the work-product doctrine is waived.  Westinghouse Elec. Corp., 951

F.2d at 1428.  Where the disclosure is inadvertent, such waiver is not automatic.  In re Grand

Jury (Impounded), 138 F.3d at 981.  Rather, the court determines whether privilege under the

work-product doctrine has been waived by an inadvertent disclosure by applying a test similar to

the one outlined in Ciba-Geigy.  See Ciba-Geigy Corp. v. Sandoz, 916 F. Supp. at 411.  The

court will "consider, among other factors, the steps taken by a party to remedy the disclosure and

-5-

any delay in doing so." In re Grand Jury (Impounded), 138 F.3d at 981.  To prevent a waiver of

privilege under the work-product doctrine, "the party asserting the . . . doctrine must pursue all

reasonable means to restore the confidentiality of the materials and to prevent further disclosures

within a reasonable period."  Id.  The party "asserting waiver of work product immunity, rather

than the party asserting the work product protection, has the burden of establishing waiver."

Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C., 202 F.R.D. 418, 423 (E.D.

Pa. 2001).

      C.     Analysis

          1.     Attorney-Client Privilege

Hi-Tech contends that the Magistrate Judge's ruling that there was no waiver of attorney-

client privilege was clearly erroneous or contrary to law for the following reasons: (1) the

Magistrate Judge failed to place the burden on JFC to show that there was no waiver due to the

inadvertent disclosure; (2) the Magistrate Judge applied the wrong standard for waiver when she

considered whether JFC's disclosure of the Memorandum was intentional; and (3) the Magistrate

Judge did not correctly apply the analysis under Ciba-Geigy.

To support its assertion of attorney-client privilege, JFC submitted a certification from

Mr. Schleck, the company president, stating that the Memorandum was not voluntarily disclosed

and that JFC did not know that Wachovia possessed the Memorandum.  (Certification of Paul H.

Saint-Antoine, Ex. D.)  JFC explained that it did not review documents produced by Wachovia

because it did not anticipate the disclosure of privileged materials when Hi-Tech's subpoena only

requested financial documents.  (Tr. at 23.)  JFC noted that Memorandum was clearly marked

"Privileged and Confidential."  JFC also gave an explanation of its actions after it discovered the

disclosure of the Memorandum.  After Wachovia produced the Memorandum to Hi-Tech,

counsel for Hi-Tech e-mailed counsel for JFC on June 21, 2005 requesting confirmation that any

privileges had been waived.  Counsel for JFC replied by e-mail within two hours, reserved the

right to claim attorney-client and work-product privileges, and asked counsel for Hi-Tech to not

disclose the document to its client or any other party until the privilege issue had been resolved.

(Certification of Aaron Van Nostrand, Esq., Ex. 3 at 26.)  The Magistrate Judge could properly

find that JFC met its burden of proof when it submitted the above information for her

consideration.

Although the Magistrate Judge did use language indicating that she was examining JFC's

intent, the Court finds that she used this language in reference to her determination of whether

the disclosure of the Memorandum resulted from gross negligence.  (Tr. at 38.)  As Ciba-Geigy

explained, if a disclosure results from "gross negligence," then the court deems the disclosure to

be intentional, meaning that attorney-client privilege is automatically waived.  Ciba-Geigy, 916

F. Supp. at 411.  The Court finds that the Magistrate Judge applied the correct standard.  Indeed,

the test for waiver in the present context is a test for gross negligence; the Ciba-Geigy factors

serve merely as an aid.

Further, the Court finds that the Magistrate Judge's consideration of the Ciba-Geigy

factors was not clearly erroneous.  First, the Magistrate Judge properly concluded that JFC took

reasonable precautions under the circumstances even though JFC did not screen the documents

produced by Wachovia to Hi-Tech because (1) JFC did not know that Wachovia possessed the

Memorandum, (2) JFC did not intend to give the Memorandum to Wachovia, and (3) JFC

reasonably presumed that only financial documents would be produced in response to the

subpoena.  Unlike in other inadvertent disclosure cases, the Memorandum was not produced by

JFC, but was rather produced by a third-party who was not intended to receive a copy of the

Memorandum.  <u>See, e.g.</u>, <u>Ciba-Geigy</u>, 916 F. Supp. at 406; <u>Bowen</u>, 2002 WL 1754493, at *4-5.

Second, with regard to the number of disclosures, the Court notes that counsel at oral argument

agreed that the waiver issue involved only the nine-page Memorandum.  Accordingly, the

Magistrate Judge could properly find that two copies of a nine-page document in a document

production of several thousand documents did not warrant a conclusion of waiver.  Similarly, the

Magistrate Judge's findings concerning JFC's delay in rectifying the disclosure were not clearly

erroneous.  JFC reinvoked the privilege within two hours of being notified of the disclosure, and

came to the Court to seek relief when its attempts to resolve the present dispute with Hi-Tech

directly were unsuccessful.

Although the Magistrate Judge did not specifically address the "extent of disclosure" and

the "interests of justice" factors, the Court determines that this was not clearly erroneous.  The

Magistrate Judge's analysis indicated that she considered the factors, and that she determined that

they weighed in favor of finding no waiver.  Therefore, the Court will affirm the Magistrate

Judge's ruling that JFC did not waive attorney-client privilege with regard to the Memorandum.

2.    <u>Work-Product Doctrine</u>

In addition, Hi-Tech contends that the Magistrate Judge's ruling that there was no waiver

of work-product privilege was clearly erroneous or contrary to law because the Magistrate Judge

applied the wrong legal standard.  Hi-Tech argues that the Magistrate Judge should have

analyzed whether JFC had disclosed the Memorandum to an adversary when the Memorandum

was disclosed to Wachovia.  <u>Maldonado</u>, 225 F.R.D. at 131.  Even if the Magistrate Judge found

-8-

that Wachovia was not an adversary, Hi-Tech asserts that she should have found waiver because JFC's disclosure of the Memorandum to Wachovia substantially increased the likelihood that Hi-Tech would gain access to the Memorandum.  United Artists Theatre Circuit, Inc. v. Monarch, Inc., No. 94-2155, 1995 WL 562225, at *3 (E.D. Pa. Sept. 20, 1995).

While Hi-Tech is correct that the waiver analysis under the work-product doctrine focuses on whether there was a disclosure to an adversary, the analysis does not stop there.  The general rule is that a disclosure to an adversary constitutes waiver.  See Westinghouse Elec. Corp., 951 F.2d at 1428.  However, an exception to that general rule applies when there is an inadvertent disclosure.  In re Grand Jury (Impounded), 138 F.3d at 981.  The Magistrate Judge correctly recognized that where there is an inadvertent disclosure, the analysis for waiver of the work-product doctrine privilege is similar to the analysis for waiver of attorney-client privilege.  (Tr. at 42.)

The Third Circuit has indicated that a court should determine whether there is waiver by considering, among other factors, the steps a party has taken to remedy an inadvertent disclosure of materials protected by the work-product doctrine.  In re Grand Jury (Impounded), 138 F.3d at 981.  Although the Magistrate Judge did not specifically use the terminology of the test in In re Grand Jury (Impounded), she noted that she was repeating some of her analysis of the Ciba-Geigy factors.  (Tr. at 42.)  Taking into account the Magistrate Judge's findings with regard to JFC's prompt reinvocation of its rights, this Court finds that the Magistrate Judge's decision that there was no waiver of privilege under the work-product doctrine was not clearly erroneous or contrary to law.

Furthermore, Hi-Tech is incorrect in its assertion that the Magistrate Judge should have

applied the "substantially increased the likelihood of access" test.  <u>United Artists Theatre Circuit</u>, 1995 WL 562225, at *3.  The Magistrate Judge determined that JFC did not know that the Memorandum had been disclosed to Wachovia, and further, did not intend to disclose the Memorandum to Wachovia.  Thus, this case is distinguishable from <u>United Artists Theatre Circuit</u>, where waiver was found for materials that Plaintiff <u>knowingly</u> disclosed to a third-party. 1995 WL 562225, at *3.  Accordingly, the Court will affirm the Magistrate Judge's determination that there was no waiver of privilege under the work-product doctrine.

IV.    <u>Conclusion</u>

For the foregoing reasons, and for good cause shown,

It is on this 16th day of August, 2006,

ORDERED that the April 4, 2006 Order of the Magistrate Judge is AFFIRMED.


s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

-10-