NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
JAME FINE CHEMS., INC.,              :
                                     :
    Plaintiff,                       :
                                     :
         v.                          :
                                     :
HI-TECH PHARM. CO., INC.,            :         Civil No. 00-3545 (AET)
                                     :
    Defendant/Third-Party Plaintiff, :         **MEMORANDUM & ORDER**
                                     :
         v.                          :
                                     :
MEDPOINTE, INC.,                     :
                                     :
    Third-Party Defendant.           :
_____:

THOMPSON, U.S.D.J.

This matter comes before the Court upon: (1) Plaintiff Jame Fine Chemicals, Inc.'s ("Jame Fine") Motion for Summary Judgment [docket # 96]; (2) Plaintiff Jame Fine and Third-Party Defendant MedPointe, Inc.'s ("MedPointe") Joint Motion for Summary Judgment [docket # 97]; (3) Third-Party Defendant MedPointe's Motion for Summary Judgment [docket # 105]; (4) Defendant/Third-Party Plaintiff Hi-Tech Pharmacal Co., Inc.'s ("Hi-Tech") Cross-Motion for Partial Summary Judgment on Choice of Law [docket # 129]; and (5) Defendant/Third-Party Plaintiff Hi-Tech's Cross-Motion to Strike [docket # 132]. The Court has reviewed the written submissions of the parties and heard oral argument on January 23, 2007. On March 9, 2007, the Court conducted a telephone conference and issued rulings on the record regarding the above-mentioned Motions. For the following reasons and for the reasons stated on the record, Jame

Fine's Motion is granted in part and denied in part, Jame Fine and MedPointe's Joint Motion is granted, MedPointe's Motion is granted in part and denied in part, and Hi-Tech's Motions are denied.

## DISCUSSION

As the parties are well aware of the facts of this case, the Court will not repeat them here. Hi-Tech's Cross-Motions address issues within the other Motions for Summary Judgment, thus, the Court will address Hi-Tech's Cross-Motions first.

**A.     Hi-Tech's Cross-Motion for Partial Summary Judgment on Choice of Law**

The Court denies Hi-Tech's Cross-Motion on Choice of Law regarding its breach of contract counterclaims against Jame Fine. New Jersey law, rather than New York law, applies here because, although an actual conflict exists between the two states' standards for examining a "between merchants" confirmatory writing under the Statute of Frauds, compare Bazak Int'l Corp. v. Mast Indus., Inc., 535 N.E.2d 633, 636-38 (N.Y. 1989), with Aircraft Inventory Corp. v. Falcon Jet Corp., 18 F. Supp. 2d 409, 414 (D.N.J. 1998) (quoting Trilco Terminal v. Prebilt Corp., 400 A.2d 1237, 1240 (N.J. Super. Ct. 1979), aff'd, 415 A.2d 356 (N.J. Super. Ct. App. Div. 1980)) (both cases explicitly noting a difference from the other state's law), New Jersey has the most significant relationship to and closest contacts with the transaction and parties to this contract dispute regarding a New Jersey manufacturer contracting to sell products in New Jersey before and after a destructive event that occurred in New Jersey at the New Jersey manufacturer's plant. See Keil v. Nat'l Westminster Bank, 710 A.2d 563, 569 (N.J. Super. App. Div. 1998).

The Court also denies Hi-Tech's Cross-Motion on Choice of Law regarding its tortious interference claims against MedPointe. Although a conflict does appear to exist between New

Jersey and New York tortious interference law, compare United Food & Commercial Workers Union v. Fleming Foods E., Inc., 980 F.2d 171, 186 (3d Cir. 1992) (including an element of unjustified or inexcusable interference), with Diehl & Sons, Inc. v. Int'l Harvester Co., 445 F. Supp. 282, 291 (E.D.N.Y. 1978) (requiring only intentional, rather than intentional and unjustified, interference), New Jersey law applies in this case because it prevails over New York law under the "governmental-interest" analysis. See Veazey v. Doremus, 510 A.2d 1187, 1189-90 (N.J. 1986). The Court finds New Jersey's interest in having its own tortious interference law applied to conduct occurring, for the most part, in New Jersey, outweighs New York's interest in protecting its residents from tortious intereference with their contracts in foreign jurisdictions.

**B.     Hi-Tech's Cross-Motion to Strike**

The Court denies Hi-Tech's Cross-Motion to Strike regarding Jame Fine's Motion for Summary Judgment. First, the Court denies Hi-Tech's Cross-Motion to Strike the Affidavit of Mary Ciamaga because the "sham affidavit" doctrine does not apply in this instance. See Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991) (applying the "sham affidavit" doctrine where a party attempts to create a material issue of fact to defeat summary judgment, not in support of summary judgment).

Second, the Court denies Hi-Tech's Cross-Motion to Strike hearsay in the Ciamaga Affidavit and in Jame Fine's brief because: (1) Hi-Tech has not identified any hearsay statements in the Ciamaga Affidavit; and (2) arguments made by counsel in Jame Fine's brief are not evidence for this Court to consider in a motion for summary judgment. See Versage v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Finally, the Court denies Hi-Tech's Cross-Motion to Strike Jame Fine's lack of authority

argument because it is not clear at this time whether this argument is offered as an affirmative defense to contract formation, or whether it is offered merely to show that no dispute of material fact exists.

**C.     Jame Fine's Motion for Summary Judgment**

**1.     Breach of Contract Counterclaims**

As to the purchase order numbered 22213, the Court grants Jame Fine's Motion for Summary Judgment of Hi-Tech's breach of contract and estoppel counterclaims on this alleged contract, as it appears undisputed that Jame Fine filled this purchase order.

As to the purchase orders numbered 22938 and 23247, the Court denies Jame Fine's Motion for Summary Judgment of Hi-Tech's breach of contract counterclaims because genuine issues of material fact exist as to: (1) whether there were oral agreements between the parties on these purchase orders (see Metcalf Decl. in Opp'n to Jame Fine's Mot. for Summ. J. ("First Metcalf Decl.") Exs. 4, 7); and (2) whether Jame Fine's October 6, 1999 (First Metcalf Decl. Ex. 8) and October 22, 1999 (First Metcalf Decl. Ex. 9) letters to Hi-Tech suffice as written confirmations of these previous oral agreements. See N.J. Stat. Ann. § 12A:2-201; Trilco, 400 A.2d at 1240.

As to the purchase order numbered 23408, the Court grants Jame Fine's Motion for Summary Judgment of Hi-Tech's breach of contract counterclaims because, although there exists a written purchase order from Hi-Tech to Jame Fine on this date (see First Metcalf Decl. Ex. 11), Hi-Tech has not presented any evidence of written acceptance of this order, as is required by the Statute of Frauds for a sale of goods for $500 or more. See N.J. Stat. Ann. § 12A:2-201. The only written communication from Jame Fine to Hi-Tech after the date of this purchase

order—October 27, 1999—is Jame Fine's January 5, 2000 letter to Hi-Tech (see First Metcalf Decl. Ex. 26) detailing its significant hurricane damage. Under New Jersey law, an ordinary merchant could not "'surmise from [this] writing that its sender was asserting the existence of a contractual relationship between the parties.'" Aircraft Inventory, 18 F. Supp. 2d at 414 (quoting Trilco, 400 A.2d at 1240). Thus, the writing does not satisfy the "between merchants" confirmatory memo exception to the Statute of Frauds, and the contract claim on this purchase order fails as a matter of law.

### 2. Estoppel Counterclaims

As to the purchase order numbered 22213, the Court grants Jame Fine's Motion for Summary Judgment of Hi-Tech's estoppel counterclaims because it appears undisputed that Jame Fine filled this purchase order.

As to the purchase orders numbered 22938 and 23247, the Court denies Jame Fine's Motion as to Hi-Tech's estoppel counterclaims because there are genuine issues of material fact as to whether: (1) Jame Fine made clear and definite promises regarding these purchase orders (see First Metcalf Decl. Exs. 4, 7-9); (2) Jame Fine made the promises with the expectation that Hi-Tech would rely thereon; (3) Hi-Tech reasonably relied on those promises (see First Metcalf Decl. Ex. 8); and (4) Hi-Tech incurred detriment of a definite and substantial nature. See Pop's Cones v. Resorts Int'l Hotel, 704 A.2d 1321, 1324 (N.J. Super. Ct. App. Div. 1998). Further, there are genuine issues of material fact as to whether Jame Fine "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [Hi-Tech] acted or changed [its] position to [its] detriment." Knorr v. Smeal, 836 A.2d 794, 799 (N.J. 2003).

As to the purchase order numbered 23408, the Court grants Jame Fine's Motion for

Summary Judgment of Hi-Tech's estoppel counterclaims because there is no genuine issue of material fact as to whether Jame Fine made "a clear and definite promise" regarding this purchase order, since Jame Fine's only communication after October 27, 1999, regarded its significant hurricane damage.  (See First Metcalf Decl. Ex. 26); Pop's Cones, 704 A.2d at 1324. For the same reason, there is no genuine issue of material fact as to whether Jame Fine engaged in conduct inducing reliance regarding this purchase order.  See Knorr, 836 A.2d at 799.

**D.     MedPointe's Motion for Summary Judgment**

The Court grants in part and denies in part MedPointe's Motion for Summary Judgment of Hi-Tech's claims of tortious interference with contract and tortious interference with prospective economic advantage.  As to the interference with contract claims, there are genuine issues of material fact as to whether: (1) MedPointe actually interfered with Hi-Tech's alleged contracts with Jame Fine (arising from the purchase orders numbered 22938 and 23247); (2) MedPointe intentionally interfered with those contracts (see Metcalf Decl. in Opp'n to MedPointe's Mot. for Summ. J. ("Second Metcalf Decl.") Exs. 9, 13); (3) the interference was without justification or excuse (see Second Metcalf Decl. Ex. 24 at p. 6, Ex. 29 at p. 2-3); and (4) the interference caused damages.  See United Food, 105 F. Supp. at 390.

As to the interference with prospective economic advantage claims, there are genuine issues of material fact as to whether: (1) Hi-Tech reasonably expected an economic advantage or benefit (arising from the purchase orders numbered 22938 and 23247); (2) MedPointe knew of that expectancy (see Second Metcalf Decl. Exs 9, 13); (3) MedPointe wrongfully and intentionally interfered with that expectancy (see Second Metcalf Decl. Ex. 24 at p. 6, Ex. 29 at p. 2-3); (4) it was reasonably probable that, without MedPointe's interference, Hi-Tech would

have received the anticipated economic benefit; and (5) Hi-Tech incurred damages from the interference.  See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 513 A.2d 31, 37 (N.J. 1989); Restatement (Second) of Torts § 766B).

There are no genuine issues of material fact in either kind of tortious interference claim as to purchase orders numbered 22213 and 23408 because, as previously ruled, Hi-Tech's breach of contract and estoppel counterclaims fail as a matter of law as to those purchase orders.

**E.**     **Jame Fine and MedPointe's Joint Motion for Summary Judgment**

The Court grants Jame Fine and MedPointe's Joint Motion for Summary Judgment of Hi-Tech's antitrust claims.  As an initial matter, the Court agrees with Jame Fine and MedPointe that Hi-Tech's antitrust claims are subject to the Rule of Reason, rather than the "Quick Look" analysis, because vertical nonprice restraints of trade are evaluated in this Circuit under the full Rule of Reason analysis.  See Gordon v. Lewinston Hosp., 423 F.3d 184, 210 (3d Cir. 2005) (quoting Orson Inc. v. Miramax Film Corp., 79 F.3d 1358, 1368 (3d Cir. 1996)).

Next, the Court grants the Joint Motion under the Rule of Reason because Hi-Tech has failed to establish the elements of a prima facie case of violation of section one of the Sherman Act.  See Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 442 (3d Cir. 1997).

In Tampa Electric Co. v. Nashville Coal Co., the Supreme Court articulated the standard for examining an exclusive dealing agreement, which is what is at issue in this case.[1]  365 U.S.

---

[1]     Although Tampa Electric concerned a case under section three of the Clayton Act, this Court may analyze this Sherman Act case under the same framework because, if an exclusive dealing agreement is not proscribed by section three of the Clayton Act, it is not forbidden under the narrower proscriptions of section one of the Sherman Act.  Tampa Electric, 365 U.S. at 335; see also Barr Labs., Inc. v. Abbott Labs., 978 F.2d 98, 110 (3d Cir. 1992).

320 (1961). To prevail on an exclusive dealing claim, a plaintiff must establish: (1) the relevant product market, or "line of commerce"; (2) the relevant geographic market, or "market area"; and (3) that competition foreclosed by the contract constitutes a substantial share of the relevant market. Id. at 327-28. Hi-Tech has failed to allege sufficient facts to establish either a proper relevant product market, or that competition foreclosed by the contract between Jame Fine and MedPointe constitutes a substantial share of the relevant market alleged.[2]

### 1. Relevant Product Market

Hi-Tech's most recently-asserted relevant market is "prescription 12-hour liquid tannate-containing cough/cold products," although it arrives at that conclusion by examining relative retail price increases for the MedPointe brand products Rynatan, Rynatuss, and Tussi-12, and their generic equivalents. (Hi-Tech's Opp'n to Joint Mot. for Summ. J. at 23, 25.) Hi-Tech claims that the relevant market is comprised of the above products because the prices for those products either remained the same or increased during the relevant period, and if any other products were in the same market, the prices would have decreased in response to substitution by consumers. (Id. at 27.) Thus, Hi-Tech effectively limits the relevant product market to only: (1) the MedPointe products of which Hi-Tech produced generic equivalents; and (2) those generic equivalent products. In doing so, however, Hi-Tech eliminates at least one other prescription 12-hour liquid tannate-containing cough/cold product from the relevant market—Tanafed—a brand product of which Hi-Tech does not manufacture a generic equivalent. (See Joint Mot. for Summ. J. at 16.) Thus, the actual relevant market Hi-Tech defines is not all prescription 12-hour liquid tannate-containing cough/cold products, but only the three MedPointe brand products of which

---

[2] It is undisputed that the proper relevant geographic market is the United States.

Hi-Tech manufactures generic equivalents, as well as the generic equivalents of those products. Hi-Tech appears to exclude any prescription 12-hour liquid tannate-containing cough/cold product for which Hi-Tech has no generic counterpart. By defining the relevant market so narrowly, and with parameters dictated by what Hi-Tech itself sells, Hi-Tech has failed to identify a proper relevant market under the antitrust laws. See Queen City Pizza, 124 F.3d at 438; Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715, 722 (3d Cir. 1991).

### 2. Foreclosure of a Substantial Share of the Relevant Market

Even if the Court accepted Hi-Tech's market definition, Hi-Tech must show that "opportunities for other [competitors] to enter into or remain in that market [were] significantly limited." Tampa Electric, 365 U.S. at 328 (emphasis added). Hi-Tech asserts that the "evidence is clear that other generic manufacturers of tannate-containing cough and cold products dropped out of the market entirely for an extended period of time." (Hi-Tech's Opp'n to Joint Mot. for Summ. J. at 13.) However, the evidence submitted by Hi-Tech shows the exit of only one company as far as the Court can discern, regarding that company's tablet product—a product outside the relevant market as Hi-Tech defines it. (See Metcalf Decl. in Opp'n to Joint Mot. for Summ. J. ("Third Metcalf Decl."), Head Dep. (attached as Ex. 55) 42:1-43:7, July 28, 2005; Second Jones Decl. Supp. Joint. Mot. for Summ. J. ("Second Jones Decl."), Head Dep. (attached as Ex. 1) 16:25-17:12; 60:2-60:11, July 28, 2005.)

Further, Hi-Tech fails to sufficiently rebut MedPointe's evidence that the number of generic competitors of MedPointe's three brand products highlighted by Hi-Tech either stayed the same or increased during the relevant time period. (See Joint Mot. for Summ. J. at 23; Jones Decl. Supp. Joint. Mot. for Summ. J. ("First Jones Decl.") Ex. 10 at ¶¶ 38, 44, 52.) Moreover,

even if the period of restricted tannate supply actually resulted in the complete absence of any generic competition, as Hi-Tech alleges,[3] the period lasted only between five and nine months (see First Jones Decl., Seltzer Dep. (attached as Ex. 12) 329:9-334:2, May 11, 2005; Third Metcalf Decl. Ex. 48 at ¶ 15), which is not a sufficiently substantial foreclosure of the relevant market.  See Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co., 141 F.3d 947, 952 (9th Cir. 1998) (determining that a temporary decline in the number of competitors is not a significant restraint of trade); Tunis Bros, 952 F.2d at 728 (stating that antitrust plaintiffs must show more than a de minimus restraint of trade).

Therefore, the Joint Motion for Summary Judgment of the antitrust claims is granted.

## CONCLUSION

For the reasons stated on the record, and for good cause shown,

It is on this 26th day of March, 2007,

**ORDERED** that Plaintiff Jame Fine's Motion for Summary Judgment [96] is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Plaintiff Jame Fine and Third-Party Defendant MedPointe's Joint Motion for Summary Judgment [97] is **GRANTED**; and it is further

**ORDERED** that Third-Party Defendant MedPointe's Motion for Summary Judgment [105] is **GRANTED IN PART** and **DENIED IN PART**; and it is further

---

[3] The Court is not convinced Hi-Tech has established this fact, as evidence submitted by both sides shows continued inventory of generic products in pharmacies and continued sales of generic products during the relevant period.  (See Third Metcalf Decl. Exs. 67, 68, and 70 at ¶ 53; First Jones Decl. Ex. 10 at ¶¶ 44, 52.)  This evidence rebuts Hi-Tech's claim that there was any actual exclusion of significant competitors from the relevant market.  See Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 394 (7th Cir. 1984).

**ORDERED** that Hi-Tech's Cross-Motion for Partial Summary Judgment on Choice of Law [129] is **DENIED**; and it is further

**ORDERED** that Hi-Tech's Cross-Motion to Strike [132] is **DENIED**.

s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.
